UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Quincy Saenz,

       Plaintiff,

v.                                 Case No. 19-10486

Kohl's Department Stores, Inc.;
Kohl's Michigan, L.P.; and Kimco        Sean F. Cox
Facility Services, LLC,            United States District Court Judge

       Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 18 and 19) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20)

After shopping at a Kohl's department store, Plaintiff slipped and fell on her way out the door. She then filed this premises liability lawsuit against Kohl's and its janitorial service.

Defendants now move for summary judgment. Plaintiff also filed a "motion for summary judgment," seeking a ruling regarding the ability of Kohl's to delegate its duty of care to maintain its premises. For the reasons below, the Court will grant the Defendants' motions for summary judgment and deny the Plaintiff's motion as moot.

### BACKGROUND

The facts are largely undisputed. On May 4, 2017, Plaintiff Quincy Saenz and her husband, Michael Baker, went to their local Kohl's department store. The day had been rainy but the weather had cleared by the time of their shopping trip. (Saenz Dep. 46:21-25; 48:14-15); (ECF No. 18-2, PageID 132). At about 6:45 p.m., Saenz and Baker entered the store and went to the customer

1

service desk to pick up some clothes that Saenz had put on hold. *Id*. at 51:1-4. The couple collected the clothing, went to the cash register, and paid for it. *Id* at. 51:21-52:10.

New clothes in hand, they started toward the door. Before they could exit, however, Saenz slipped and fell to the floor. *Id*. at 52:12-16. As she laid on the floor, she felt water on her right leg. *Id*. at 52:19-53:3.

Kohl's employees, including Area Supervisor Sheree Beleski, assisted Saenz after her fall. Saenz, Baker, and Beleski observed small, sporadic spots of water on the floor where Saenz had fallen. Saenz Dep. 55:2-18 (describing "two or three little sporadic spots of water" that were "maybe the size of a dime"); Baker Dep. 18:3-24 (describing "some drops of water scattered around," and "a couple drops" of water on the floor); Beleski Dep. 21:1-8 (describing a "very small amount" of water on the floor).

While the group was trying to determine how the water had accumulated, another customer entered the store and retrieved a nearby shopping cart. This customer noticed that water had pooled under the cart and pointed it out to Saenz. Saenz Dep. 56:20-57:3. Saenz saw water dripping from other carts onto the floor, near where she had fallen. *Id*. at 62:22-25.

On January 16, 2019, Saenz filed this lawsuit in Wayne County Circuit Court. Her complaint consists of one count of "negligence/premises liability" against Kohl's[1] and its janitorial service, Kimco Facility Services, LLC. In February 2019, the Defendants removed the case to this

---

[1] For ease of reference, the Court refers to Defendant Kohl's Department Stores, Inc. and Defendant Kohl's Michigan, L.P., as "Kohl's" collectively.

court based on diversity of citizenship.[2] The parties engaged in discovery. On January 8, 2020, Kohl's and Kimco each filed their own motion for summary judgment. (ECF Nos. 18 and 19). On January 9, 2020, Saenz filed a motion, requesting "that this Court hold as a matter of law that [Kohl's] was solely responsible for the condition of the premises at the time of [Saenz's] fall as the duty to maintain the premises was non-delegable." (ECF No. 20, PageID 517).

## ANALYSIS

### I. Applicable Standards

Summary judgment will be granted if there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The moving parties bear the burden to show that there is no genuine issue of material fact, but their burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005); *see also Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005) ("Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (citations omitted).

Once the moving parties have carried their burdens, the nonmoving party must set forth specific facts, supported by evidence in the record, that show there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the [non-

---

[2] This case was originally removed as two cases, one for Kohl's and one for Kimco. On May 7, 2019, the Court consolidated the cases, and ordered that all subsequent papers be filed on the above-captioned docket. (ECF No. 6).

moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.  The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Because the Court's jurisdiction in this case is based on diversity of citizenship, the Michigan Supreme Court is the controlling authority. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  If the Michigan Supreme Court has not decided an issue, then the Court "must ascertain the state law from all relevant data." *Orchard Grp., Inc., v. Konica Med. Corp.*, 135 F.3d 421, 427 (6th Cir. 1998) (citations omitted).  "Relevant data includes state appellate court decisions, supreme court dicta, restatements of law, law review commentaries, and majority rule among other states." *Id*.  When considering these sources, the Court will not disregard a state intermediate appellate court's opinion "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Garden City Osteopathic Hosp., v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citations omitted).

## II.    The Parties' Motions

There are three motions pending before the Court. First, Kohl's has filed a motion for summary judgment, arguing that Saenz cannot prove that it had actual or constructive knowledge of the water on the floor before she fell.[3] (ECF No. 18). Second, Kimco has filed a motion for summary judgment, arguing that it owed no duty to Saenz. (ECF No. 19). Third, Saenz has filed a

---

[3] Kohl's also argues that Saenz's claim against it sounds in premises liability, not traditional negligence. In her response, Saenz agrees with this characterization. (ECF No. 25, PageID 824) ("[Saenz's] negligence claim against this Defendant is based on premises liability.")

motion, requesting that the Court hold, as a matter of law, that Kohl's was solely responsible for the condition of the premises at the time of her fall because its duty could not be delegated to Kimco. (ECF No. 20). The parties filed the appropriate responses (ECF Nos. 22, 24, and 25), and replies. (ECF Nos. 26, 27, and 28).

### A.    Kohl's Motion for Summary Judgment (ECF No. 18)

Kohl's and Saenz agree that, as a business proprietor, Kohl's owed a duty of care to Saenz, one of its business invitee. *See Clark v. Kmart Corp.*, 465 Mich. 416, 634 N.W.2d 347, 348-49 (2001). This duty, however, is not absolute. *See Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 614 (1995) ("With the axiom being that the duty is to protect invitees from unreasonable risks of harm, the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees.") "The Michigan Supreme Court has long followed the same test regarding duties owed by storekeepers to their customers:"

> It is the duty of a storekeeper to provide reasonably safe aisles for the customers. The proprietor is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees, and he is liable when the unsafe condition otherwise caused is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it.

*Guthre v. Lowe's Home Centers, Inc.*, 204 Fed.App'x 524, 526 (6th Cir. 2006) (quoting *Carpenter v. Herpolsheimer's* Co., 278 Mich. 697, 271 N.W. 575, 575 (1937)).  In other words, when a plaintiff alleges a claim of premises liability under Michigan law, she must show one of the following: (1) that the defendant caused the unsafe condition; (2) that the defendant had actual knowledge of the unsafe condition; **or** (3) that the defendant had constructive knowledge of the

unsafe condition. *See Minni v. Emro Marketing Co.,* 1997 WL 359073 (6th Cir. 1997) (per curiam); *see also Serinto v. Borman Food Stores*, 158 N.W.2d 485, 486 (Mich.1968).

Here, Saenz does not argue that Kohl's itself caused the water spots. She concedes that the water was caused by other customers who had left wet carts near the door. (ECF No. 24, PageID 825) (stating that "customers had been bringing carts into the store from the outside"). Nor does Saenz provide any indication that Kohl's was actually aware of the water spots. Although she argues that Kohl's knew "that it was raining and that customers had been bringing carts into the store from the outside," she points to no evidence that Kohl's had prior, actual knowledge of the unsafe condition that caused her fall— the water that had accumulated inside the door.

Rather, the main thrust of Saenz's argument is that Kohl's had constructive notice of the unsafe condition. (ECF No. 24, PageID 825) ("Contrary to Defendants' argument, the question is not when the particular drops of water formed, but . . . that the condition in this case, water dripping from the carts, was of such a character and existed for a sufficient length of time, they should have had actual knowledge of it.") (internal citations omitted). To establish constructive notice, Saenz must be able to demonstrate "that the unsafe condition ha[d] existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it." *Whitmore*, 279 N.W.2d at 321. This showing requires evidence that the condition had existed for a "considerable time." *Id.* The mere fact of an accident, standing alone, does not prove negligence. *Id.; see also Burghardt v. Detroit United Ry.*, 173 N.W. 360, 361 (Mich.1919). "The burden of presenting evidence of notice regarding dangerous conditions always rests with the plaintiff." *DuBoise v. Wal-Mart Stores, Inc*., 2018 1940412 at *2, (6th Cir. 2018) (order) (citing *Clark*, 634 N.W.2d at 349)).

"Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 984, 725 N.W.2d 455 (2007). However, Kohl's is entitled to summary judgment if Saenz does not point to facts that "provide a basis for inferring how long the condition existed." *DuBoise*, 2018 WL 1940412 at *2 (quoting *Charron v. H & H Lanes*, 2008 WL 1961226 at *1 (Mich. Ct. App. 2008)). "[M]ere conjecture does not establish a triable issue of fact." *Id*.

Here, Saenz does not point to any evidence upon which a reasonable jury could conclude that the water spots existed for a "considerable amount of time." *Whitmore*, 279 N.W.2d at 321. Saenz cites deposition testimony that she purports shows that Kohl's employees "were well aware of the potential for the water to accumulate from the carts on raining days." (ECF No. 24, PageID 820-821). It's happened before, Saenz's argument goes, so Kohl's should have known it could happen again. However, the Michigan Court of Appeals has rejected this type of argument as insufficient to raise an inference of constructive notice. *See Duncan v. Meijer, Inc.*, 2013 WL 5989723 at *2, n.1 (Mich. Ct. App. 2013) (per curiam) ("[E]vidence that defendant's personnel knew that grapes had fallen in the past would not establish that they knew or should have known that these grapes had fallen on this particular occasion.")

Of course, Michigan law does not require Saenz or her witnesses to have personal knowledge of how long the water spots existed. *See Guthre*, 204 Fed.App'x at 527. But she "does have to present some affirmative evidence that points to the condition having existed for more than mere seconds." *Id*.  Based on the evidence before the Court, it is just as likely that the water accumulated seconds before Saenz fell as it is that the water accumulated minutes or hours before

she fell. *See Hernandez v. Kmart Corp*., 2004 WL 1620853 at *2 (Mich. Ct. App. 2004). To find for Saenz, a jury would have to unreasonably speculate as to when the water spots formed, and such speculation is impermissible. *Id*. Accordingly, Saenz has failed to show that Kohl's had constructive notice of the unsafe condition, even when all the evidence is viewed in her favor.

Because Saenz has not shown that Kohl's caused the water spots or that Kohl's had actual or constructive knowledge of their existence before her fall, summary judgment in favor of Kohl's is appropriate, and the Court will grant this motion.

**B.     Kimco's Motion for Summary Judgment (ECF No. 19)**

The parties agree that, as the janitorial contractor, Kimco cannot be liable to Saenz under a premises liability theory: it did not own, control, or possess the Kohl's store where Saenz fell. Accordingly, Saenz must proceed against Kimco on an ordinary negligence theory. To get out of the gate on this claim, Saenz must identify a duty that Kimco owed to her that it breached. *Case v. Consumers Power Co*., 463 Mich. 1, 5, 615 N.W.2d 17, 20 (2000).

Kimco argues that its obligation to maintain the Kohl's store, "arises solely based on the contract entered into with Kohl's." (ECF No. 19, PageID 332). This contract was task-based; it did not require Kimco employees to be in the store during any particular times. (ECF No. 19-4). On May 4, 2017, Kimco's employees had completed their daily tasks and left the store hours before Saenz's fall. Kimco argues that, "the only duty that Kimco owed to [Saenz] was a duty to exercise reasonable care to not harm others while performing its contractual obligations." Kimco believes it owed no duty to Saenz to clean up water spots that formed hours after it had fulfilled its daily contractual obligations to Kohl's.

8

In response, Saenz argues that Kimco breached its common law duty to exercise reasonable care. She also argues that "[t]here is testimony that Kimco's employees were required to be on the premises at the time of [her] injury and were responsible for cleaning up spills." (ECF No. 25, PageID 999) (referring to Beleski Dep. 43:15-44:18; Samborski Dep. 11:19-24, 20:24-21:2).

The Michigan Supreme Court has clearly articulated how courts should determine whether a party to a contract owes a duty to a nonparty under Michigan law. The Court must determine whether the contracting defendant owed the noncontracting plaintiff a duty that was "apart from the defendant's contractual obligations to another." *Loweke v. Ann Arbor Ceiling & Partition Co.*, LLC, 489 Mich. 157, 169, 809 N.W.2d 553, 560 (2011). In other words, the duty to the nonparty must be "separate and distinct" from the defendant's contractual obligations. *See generally Loweke*, 489 Mich. at 168-170.  This separate duty can arise from many sources including statute or the "generally recognized common-law duty to use due care in undertakings." *Id*. at 170. Importantly, contractual obligations do not "extinguish the simple idea that is embedded deep within the American common law of torts . . . : if one having assumed to act, does so negligently, then liability exists as to a third party for failure of the defendant to exercise care and skill in the performance itself." *Id*. at 170.

In essence, Saenz argues that Kimco had an extracontractual duty, owed to her, to be present at the time of her fall and clean up the water spots that caused her fall. The Court disagrees. Without Kimco's contract with Kohl's, Kimco would be under no obligation to clean any spills at the store. And even if Kimco's contract required its employees to be in the store at the time of Saenz's fall, their absence would be a breach of a contractual duty, not any duty owed to Saenz.

Saenz's reference to *Loweke*'s facts to support her argument is counterproductive. *Loweke*'s facts are readily distinguishable from this case. There, a carpentry subcontractor leaned numerous sheets of cement board against a wall on a construction site. *Id.* at 160. Several of these boards fell and injured a worker employed by an electric subcontractor. The electrician sued the carpentry subcontractor, who attempted to defend against the suit by arguing that the alleged duty that had been breached was not separate or distinct from its contractual duties to the general contractor. Although the trial court and the Michigan Court of Appeals agreed with this argument, the Michigan Supreme Court reversed, concluding that the subcontractor's contract did not relieve it of "its preexisting common-law duty to use ordinary care in order to avoid physical harms to foreseeable persons and property in the execution of its undertakings." *Id.* at 172.

In contrast to the carpentry subcontractor in *Loweke*, Kimco undertook no activity that endangered or harmed a third-party. If Kimco had somehow negligently performed its contractual obligations (by, perhaps, making the water spots bigger when it tried to clean them), then that negligence could give rise to a breach of its common law duty to exercise reasonable care in its undertakings. But that is not this case. Instead, Saenz attempts to fault Kimco for allegedly failing to fulfill its contractual obligations to Kohl's. Because she fails to identify a separate and distinct duty that Kimco owed to her to clean the water spots or be present during her fall, the Court will grant summary judgment in favor of Kimco.

**C.      Saenz's Motion for Summary Judgment. (ECF No. 20)**

Although the last pending motion before the Court purports to be for summary judgment, it does not actually seek that kind of relief. Rather, Saenz filed this motion to request "that this Court rule as a matter of law that Defendants, Kohl's, duty to maintain the premises was

10

nondelegable and, therefore, at the time of trial Defendants, Kohl's, cannot avoid liability by delegating that duty." (ECF No. 20, PageID 526).

This motion is puzzling because Kohl's has never argued that it delegated its duty to maintain its premises. In fact, Kohl's explicitly stated that it did not delegate this duty. (ECF 22, PageID 720).

This motion appears to have been some sort of litigation tactic or an effort to frame issues for trial.[4] Resolving it would not change the Court's conclusions as to either Defendant's motion for summary judgment. Accordingly, the Court will deny Saenz's motion as moot.

## CONCLUSION

For the reasons above, the Court **GRANTS** the motion for summary judgment filed by Kohl's (ECF No. 18); **GRANTS** the motion for summary judgment filed by Kimco (ECF No. 19); and **DENIES** the motion for summary judgment filed by Saenz, (ECF No. 20), as **MOOT**.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 5, 2020

---

[4] In response to this motion, the Defendants argued between themselves about whether a question of fact exists as to whether Kimco's alleged failure to completely perform its contractual obligations was misfeasance or nonfeasance. (ECF Nos. 22 and 26). The resolution of this dispute would not affect the outcome of any pending motion or any aspect of this case, so the Court need not resolve it.